UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| STACEY M. TUELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil No. 3:14-cv-1834 |
| v. | ) Judge Sharp |
| | ) |
| JUSTIN MCCORMICK, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM**

Plaintiff brings claims under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments to the U.S. Constitution. Defendant Officer Charles Embry ("Embry") and Defendant Metropolitan Government of Nashville and Davidson County, Tennessee ("Metro") have filed motions to dismiss (Docket Nos. 33 & 59) Plaintiff's First Amended Complaint (Docket No. 29) ("Complaint"). Embry has also filed a motion to consider audio dispatch recordings (Docket No. 52).

The Court will grant both motions to dismiss. The Court will also grant Embry's motion to consider audio dispatch recordings.

**I. Background**

The Complaint sets out the following facts. On September 16, 2013, Plaintiff's car was legally parked on the west side of Ewing Street in downtown Nashville, Tennessee. At the time, Plaintiff was homeless and living in his car.

Sometime between 7:00 a.m. and 8:00 a.m. that day, Plaintiff was arrested and taken to jail by Embry for failing to appear on an unrelated misdemeanor offense. Plaintiff asked Embry if he needed to have someone watch his car. Embry told Plaintiff not to worry about the car.

1

Defendant Officer Justin D. McCormick ("McCormick") arrived at Plaintiff's car within an hour of the arrest. On the orders of his superiors, McCormick ticketed the car for illegal parking and called Defendant Martin's Wrecker Service ("Martin's Wrecker") to tow the car.[1] An employee of Martin's Wrecker arrived and towed the car to a nearby lot.

Plaintiff was released from jail on September 20, 2013. He soon returned to his parking site and saw that his car was gone. After learning that the car had been towed by Martin's Wrecker, he asked that his car be released. Martin's Wrecker refused to release the car unless Plaintiff would pay a storage cost of several hundred dollars. Plaintiff, indigent and homeless, could not pay the cost.

On October 7, 2013, Plaintiff's counsel filed a motion in Nashville traffic court to dismiss and stay the sale of the car. The court set a hearing for November 21, 2013. Around the same time, Plaintiff's counsel also contacted Jennifer Cavanaugh of the Metropolitan Nashville Department of Law. Cavanaugh wrote Martin's Wrecker, asking the company not to sell the car.

At the November 21, 2013 hearing, McCormick testified that his superiors had instructed him to tow the car. The traffic court judge promptly ordered that the car be returned to Plaintiff. Immediately after the hearing, Plaintiff drove to Martin's Wrecker. There, he was told that the car had been sold to Nashville Pull-a-Part, where it was stripped and dissembled. Plaintiff's car had contained all of his clothes and possessions, including a wedding band and a watch; everything in the car was either lost or discarded. Plaintiff has not received any compensation for the property.

---

[1] Metro assigns the right to tow vehicles on the streets. Tow companies like Martin's Wrecker submit bids for this privilege. Metro has designated Martin's Wrecker as the tow company that police must call when towing vehicles in the Central Precinct area of Nashville, an area that includes Ewing Street.

## II. Legal Standard

The Federal Rules of Civil Procedure require Plaintiff to provide a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In deciding a motion to dismiss under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." DirecTV, Inc., v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007). The court must assume that all of the factual allegations are true, even if they are doubtful. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Legal conclusions are not entitled to the presumption of truth. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## III. Analysis

**A. Sufficiency of Plaintiff's Allegations of Municipal Liability against Metro**

Metro argues that both of Plaintiff's claims fail to state a basis for municipal liability.

To plead a claim for municipal liability under § 1983, Plaintiff must plausibly allege that his constitutional rights were violated and that a policy or custom of Metro was the "moving force" behind the deprivation of Plaintiff's rights. Miller v. Sanilac Cnty., 606 F.3d 240, 254–55 (6th Cir. 2010) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)). There are four ways that Plaintiff can establish municipal liability under § 1983: (1) by challenging the official action of a municipal legislative body, agency, or board; (2) by challenging a policymaking decision by an individual with final decision-making authority; (3) by challenging Metropolitan Government's deliberately indifferent failure to screen, train, or supervise its employees; or (4) by challenging Metro's deliberate indifference to a clear and persistent pattern of illegal activity. Pembaur v. City of Cincinatti, 475 U.S. 469, 483–84 (1986); Monell, 436 U.S. at 694; Thomas v. City of Chattanooga, 398 F.3d 426, 433 (6th Cir. 2005). In the context of Section 1983

municipal liability, courts have interpreted Iqbal's standards strictly.  Hutchinson v. Metro. Gov't, 685 F. Supp. 2d 747, 751 (M.D. Tenn. 2010).

Plaintiff argues that his claims "clearly fall into the category of claiming a deliberate indifferent failure to screen, train, or supervise [Metro's] employees." (Docket No. 62, p. 8.) Under a claim for failure to train, Plaintiff must show that (1) the training was inadequate to prepare individuals for tasks that they must perform, (2) this inadequacy persisted due to Metropolitan Government's deliberate inference, and (3) the inadequacy is closely related to or actually caused the Plaintiff's injury.  Pinton v. Cnty. of Summit, 540 F.3d 459, 464 (6th Cir. 2008).  In this context, deliberate indifference can be demonstrated in two ways: "through evidence of prior instances of unconstitutional conduct demonstrating that the [municipality] had notice that the training was deficient and likely to cause injury but ignored it," or "through evidence of a single violation of federal rights, accompanied by a showing that the [municipality] had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation."  Harvey v. Campbell Cnty., Tenn., 453 Fed. App'x 557, 562–63 (6th Cir. 2011) (internal citations omitted).  Deliberate indifference based on a single violation of rights requires "a complete failure to train the police force, training that is so reckless or grossly negligent that future police misconduct is almost inevitable or would properly be characterized as substantially certain to result."  Id. at 567 (citing Hays v. Jefferson Cnty., 668 F.2d 869, 874 (6th Cir. 1982)).

Liability for unconstitutionally inadequate supervision is treated, for all intents and purposes, as a failure to train.  It requires more than a mere failure to act; "[i]nstead, the supervisors must have actively engaged in unconstitutional behavior."  Gregory v. City of Louisville, 444 F3d at 751 (6th Cir. 2006).  Plaintiff must also allege that Metro was deliberately indifferent to a history

4

of widespread abuse. Berry v. City of Detroit, 25 F.3d 1342 (6th Cir. 1994). Liability for a municipality's failure to screen a prospective employee also requires a finding of deliberate indifference. To hold Metro liable for inadequately screening Embry in the hiring process, Plaintiff must show that adequate scrutiny of his background would have led a reasonable policymaker to conclude that the plainly obvious consequence of hiring him would be the deprivation of a constitutional right. Bd. of Cnty. Commrs of Bryan Cnty. v. Brown, 520 U.S. 397, 411 (1997).

Plaintiff makes several arguments about Metro's failure to screen, train, or supervise its police officers. He points to the improper ticket that led to his car being towed, arguing that "Metropolitan police officers' training did not adequately prepare them for the task of issuing ticket[s] for parking." (Docket No. 62, p. 9.) He also notes that "the traffic court judge for [Metro] conclusively determined that [Plaintiff's] vehicle was improperly towed by the city by ordering that the vehicle be returned to [Plaintiff]." (Docket No. 62, p. 9.) He contends that the traffic judge's conclusion implies that Metro "authoriz[ed] . . . gross negligence [towards] a legal duty owed to Plaintiff." (Docket No. 62, p. 10.)

Without more, the Complaint has not alleged that Metro failed to train its officers in issuing parking tickets. Even assuming that the ticketing officer received no training on parking tickets, Plaintiff has alleged no department-wide failure to train for issuing tickets. See City of Canton, 489 U.S. 378, 390–91 (1989) ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program."); see also Sexton v. Kenton Cnty. Det. Ctr., 702 F. Supp. 2d 784, 791 (E.D. Ky. 2010) ("[A] purported failure to discipline a single officer, as opposed to a systematic policy, cannot support a claim of municipal liability. A Monell claim

5

will fail where the plaintiff provides evidence as to only a single officer, rather than evidence regarding department-wide inadequacy in training.") (internal citations omitted).

Plaintiff also fails to state a claim for deliberate indifference. Inadequate police training serves as a basis for § 1983 liability only when "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Slusher v. Carson, 540 F.3d 449, 457 (6th Cir. 2008) (internal quotation marks omitted). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Connick v. Thompson, 563 U.S. —–, 131 S. Ct. 1350, 1360 (2011). To establish deliberate indifference, the plaintiff must ordinarily show "prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." Fisher v. Harden, 398 F.3d 837, 849 (6th Cir. 2005). Deliberate indifference requires more than a negligent series of oversights; the risk of a constitutional violation must have been "plainly obvious," yet disregarded. Stemier v. City of Florence, 126 F.3d 856, 865 (6th Cir. 1997).

To make out the claim, Plaintiff must allege that Metro so completely failed to train its police officers that constitutional violations were substantially certain to occur. See Hays 668 F.2d at 874. Plaintiff has not made this allegation. He pleads no facts to show that Metro was aware of officers illegally ticketing cars in the past, much less anything to suggest that Metro ignored the practice. Even assuming that Metro provided its officers no training on parking tickets, Plaintiff cannot establish that the lack of training itself was the proximate cause of his car being towed. See Mann v. Helmig, 289 Fed. App'x 845, 850–51 (6th Cir. 2008) (noting that one can always retreat far enough to find a policy that "caused" the alleged constitutional violation, but declining

6

to find an "affirmative link" were the connection between the policy and the injury are too tenuous); see also Connick, 131 S. Ct. at 1363 ("[S]howing merely that additional training would have been helpful in making difficult decisions does not establish municipal liability.").

Finally, Plaintiff has completely failed to allege that Metro is liable as a municipality for hiring any of the city employees involved. The Complaint contains no facts or allegations that mention the city's hiring process. On this point, no claim has been pled.

In short, Plaintiff argues that the mere towing of his car gives rise to an inference that Metro failed in its hiring, training, or supervision of all of the officers and employees involved. This inference would be impermissible. Municipal liability is not *respondeat superior* liability, so it would be improper to hold Metro liable for a single act of its employees. See City of Canton, 489 U.S. at 390–91 ("To infer the existence of a city policy from the isolated misconduct of a single, low-level officer, and then to hold the city liable on the basis of that policy, would amount to permitting . . . *respondeat superior* liability.") (quoting Okla. City v. Tuttle, 471 U.S. 808, 831 (1985)); Thomas v. City of Chattanooga, 398 F.3d 426, 432 (6th Cir. 2005).

Plaintiff has failed to plead a claim for relief based on Metro's failure to screen, train, or supervise its employees. All of Plaintiff's claims against Metro will be dismissed in their entirety.

### B. Qualified Immunity (Embry)

Embry argues that qualified immunity shields him from all of Plaintiff's claims. First, Embry contends that Plaintiff has not stated a Fourteenth Amendment process claim because the Complaint does not allege that available state law remedies were inadequate. Second, Embry argues that Plaintiff has not stated a Fourth Amendment claim because the Complaint fails to state any constitutional violation against Embry.

7

In civil suits for money damages, government officials are entitled to qualified immunity for discretionary acts that do "not violate clearly established [federal] statutory or constitutional law." Anderson v. Creighton, 483 U.S. 635, 638–39 (1987). Qualified immunity is rooted in the premise that government officials should be free from the costs, burdens, and distractions of litigating unsustainable claims. See Crawford-El v. Britton, 523 U.S. 574, 578–79 (1998).

When presented with a qualified immunity argument in a § 1983 action, a court must first determine whether, taking the complaint's facts as true, the plaintiff has alleged that "constitutional violation[s] occurred." Lyons v. City of Xenia, 417 F.3d 565, 571–72 (6th Cir. 2005).

### i. Plaintiff's Fourteenth Amendment Claim

In the Sixth Circuit, a plaintiff states a § 1983 procedural due process claim through one of two methods: (1) by demonstrating that he is deprived of property as a result of established state procedure that itself violates due process rights; or (2) by proving that the defendants deprived him or property pursuant to a "random and unauthorized act." Macene v. MJW, Inc., 951 F.2d 700, 706 (6th Cir. 1991). When a plaintiff's § 1983 procedural due process claim alleges loss of property as a result of a random and unauthorized act, the plaintiff must plead that state-law remedies would not adequately compensate for the loss. Mitchell v. Fankhauser, 375 F.3d 477, 483–84 (6th Cir. 2004).

Plaintiff does not identify any established state procedure that violated his right to procedural due process. Instead, his Complaint seems to allege that Embry made a random, unauthorized decision to order that Plaintiff's car be towed. As a result, Plaintiff was required to allege that available state-law remedies against Embry would be inadequate. See Mitchell, 375 F.3d at 483–84.

8

Embry argues that Plaintiff failed to do so. Specifically, Embry points out that Plaintiff could have filed a state tort claim for conversion—a claim that Plaintiff had already raised against other Defendants in the same action. Embry concludes that, because the complaint never alleged that a conversion claim would be inadequate in Plaintiff's suit against Embry, Plaintiff has failed to state a procedural due process claim.

The Court agrees with Embry. Plaintiff has failed to allege that a state-law tort claim against Embry would be inadequate to provide relief. See Wagner v. Higgins, 754 F.2d 186, 192 (6th Cir. 1985) (finding that plaintiff failed to allege inadequate remedies when he could have filed a private cause of action against defendants). See also Hardy v. Maupin, 2012 WL 369575, at *3 (W.D. Ky. Feb. 3, 2012) (finding conversion an adequate state remedy where a plaintiff brought a procedural due process claim for the alleged deprivation of property); Bishop v. Johnson, 2010 WL 3035722, at *3 (W.D. Ky. July 30, 2010) (finding conversion an adequate state remedy for a procedural due process claim alleging loss of property during an arrest). As Embry points out, Plaintiff easily could have raised a conversion claim against Defendant Embry; indeed, Plaintiff brought conversion claims against two other defendants. (Docket No. 29, pp. 9–10.) But the Complaint makes no mention of a tort claim against Embry.

In response, Plaintiff argues that a conversion claim "is not applicable" to Embry because Plaintiff brought chose to bring tort claims against other the defendants instead of against Embry. But this argument fails: a plaintiff may not allege that a remedy is unavailable or inadequate merely because he chooses not to pursue it. See, e.g., D'Amico v. City of Strongsville, Oh., 59 Fed. App'x 675, 678 (6th Cir. 2003); Jackson v. Burke, 256 F.3d 93, 96 (2d Cir. 2001).

9

Because the Complaint fails to allege that relevant state remedies are inadequate, Plaintiff has failed to state a procedural due process claim against Defendant Embry. The Court will grant Embry's motion to dismiss Plaintiff's Fourteenth Amendment claim.

### ii. Plaintiff's Fourth Amendment Claim

The Complaint also alleges that Embry violated the Fourth Amendment by ordering that Plaintiff's car be towed. Specifically, the Complaint alleges that Embry and other officers "seized [Plaintiff's car]" after Plaintiff had been arrested and jailed. (Docket No. 29, pp. 4, 8.) It states that Embry "called for a tow truck to remove" the car, even though "no reasonable suspicion or probable cause supported the . . . seizure." (Docket No. 29, p. 9.) Plaintiff's Complaint notes that the car "was not illegally parked or abandoned" at the time. (Docket No. 29, p. 9.)

This is not enough to show a constitutional violation. Police officers may move an arrestee's legally-parked car from a public street without violating the Fourth Amendment. See U.S. v. Ballard, 432 Fed. App'x 553, 557 (6th Cir. 2011); U.S. v. Harvey, 16 F.3d 109, 112 (6th Cir. 1994). The officers need only to have made a "reasonable [decision] under the circumstances." Collins v. Nagle, 892 F.2d 489, 494 (6th Cir. 1989). In Collins v. Nagle, the Sixth Circuit found that officers made a reasonable decision to tow a mining truck after arresting the driver. Id. The court noted that the officers "were faced with the problem of securing the truck" and chose to impound it as a "means to insure against . . . damage or theft." Id. The Sixth Circuit came to a similar conclusion in U.S. v. Ballard. 432 Fed App'x at 557. The Ballard court found that officers made a reasonable decision to impound an arrestee's car "for safety and traffic purposes" when nobody else could move it, even though the car was parked legally. Id.

See also Harvey, 16 F.3d at 112 ("[T]he police lawfully exercised their discretion in deciding to impound the vehicle in the absence of any licensed driver to attend to it.").

This case is no different. Plaintiff was arrested on the morning of September 13. (Docket No. 29, p. 4.) He was taken to jail, leaving nobody else to move his car.[2] Even assuming that Plaintiff's allegations are correct—and Embry ordered that Plaintiff's car be towed and impounded—Embry did not violate the Fourth Amendment. Like the officer in Ballard, Embry made a reasonable decision to move Plaintiff's car from a public street. Moreover, Plaintiff never alleged that Embry's decision was motivated by bad faith, or was that the decision was a pretext for searching Plaintiff's vehicle for evidence of criminal activity. See, e.g., S.D. v. Opperman, 428 U.S. 364, 376 (1976) (finding no Fourth Amendment violation when police impounding was not pretext concealing an investigatory police motive).

Plaintiff has failed to state that Embry violated Plaintiff's Fourth Amendment rights. Qualified immunity therefore shields Embry from Plaintiff's Fourth Amendment claim. See West v. Atkins, 487 U.S. 42, 48 (1988); Phillips v. Roane Cnty., Tenn., 534 F.3d 531, 538 (6th Cir. 2008).

### iii. Embry's Motion to Consider Audio Recordings

As part of his motion to dismiss, Embry moves for the Court to consider audio recordings from the Emergency Communications Center ("ECC") on the morning of September 16, 2013. (Docket No. 52, p. 1.)

A court may take consider public records when presented with a motion to dismiss. See Lynch v. Leis, 382 F.3d 642, 648 n.5 (6th Cir. 2004); Kostrzewa v. City of Troy, 247 F.3d 633,

---

[2] The Complaint never alleges that another person had access to or control of the car. Plaintiff alleges that Fr. Bill Demmler, a priest at Holy Trinity Church in Nashville and a friend of Plaintiff's, would have "protect[ed]" the car if Plaintiff had known it was in danger. But plaintiff does not elaborate on this statement, and does not allege that Fr. Demmler could have moved the car himself.

11

644 (6th Cir. 2001). However, those records must merely "fill[] in the contours and details of the plaintiff's complaint." Yeary v. Goodwill Indus.- Knoxville, Inc., 107 F.3d 443, 445 (6th Cir. 1997). If the records "add[] [some]thing new," to the complaint, a court should not consider the records. See id.

Here, the ECC recordings add nothing substantive to the Complaint. In the first recording, a woman named Julie Girt calls a dispatcher to complain about a "little white car" blocking a loading dock on Ewing Street. (Docket No. 52, Ex.1.) The dispatcher sends officers to the scene; the officers soon call back to request a tow truck. The dispatcher then calls an employee at Martin's Wrecker and asks that the car be towed away. Plaintiff's name is never mentioned, nor is Embry's.

Considering these recordings does not change the outcome of Embry's motion to dismiss. Nothing in the recordings suggests that Embry violated Plaintiff's Fourth Amendment rights, so Embry is still entitled to qualified immunity. Plaintiff's claims against Embry will be dismissed.

**CONCLUSION**

The Court cannot overlook what brought us here: two years ago, all of Plaintiff's possessions were taken from him. His car—his only form of shelter—is gone. Everything that he owned was sold, lost, or thrown away. He has received neither an explanation nor an apology. His ordeal has been long, unfair, and deeply troubling.

Nevertheless, the Court is bound to follow the law. Under the applicable standards, the Complaint has not alleged enough for Plaintiff to hold Embry or Metro accountable for his plight.

Defendant Metro's motion to dismiss the Complaint is GRANTED with respect to all claims against Metro. All claims are dismissed without prejudice.

Defendant Embry's motion to dismiss the Complaint is GRANTED with respect to all claims against Embry. All claims are dismissed without prejudice. Embry's motion to consider audio dispatch recordings is GRANTED.

An appropriate ORDER will enter.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE